NO. 26-4001

IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT
## UNITED STATES OF AMERICA,

*Appellee,*

v.

## ABALOY CRUZ GONZALEZ

*Appellant.*

On Appeal from the United States District Court
For the Middle District of North Carolina

JOINT APPENDIX VOL. I


ERIC D. PLACKE
Federal Public Defender

LISA COSTNER
Assistant Federal Public Defender
251 N. Main St., Suite 849
Winston-Salem, NC 27101
(336) 631-5278

*Attorneys for Appellant*

DAN BISHOP
United States Attorney

JULIE NIEMEIER
Assistant United States Attorney
101 S. Edgeworth St.
Greensboro NC 27402
(336) 333-5351

*Attorneys for Appellee*

## TABLE OF CONTENTS

## JOINT APPENDIX, VOLUME I

Judgment,
Filed December 18, 2025 ........................................ 1

Transcript, Sentencing Hearing,
Hearing Held December 5, 2025 ........................................ 9

## JOINT APPENDIX, VOLUME II

Docket Entries, ........................................ 35

Criminal Complaint,
Filed May 7, 2025 ........................................ 41

Wavier of Preliminary Hearing and Detention Hearing,
Filed May 8, 2025 ........................................ 48

Indictment,
Filed May 27, 2025 ........................................ 49

Wavier of Appearance at Arraignment,
Filed June 9, 2025 ........................................ 51

Notice of Intent to Plead Guilty,
Filed July 2, 2025 ........................................ 52

Factual Basis,
Filed July 15, 2025 ........................................ 55

Transcript, Change of Plea Hearing,
Hearing Held August 06, 2025 ........................................ 62

Notice of Appeal,
Filed December 23, 2025 ........................................ 78

## SEALED JOINT APPENDIX, VOLUME III

Final Revised Presentence Investigation Report,
Disclosed November 14, 2025 ........................................ 80

Sealed Statement of Reasons,
Filed December 18, 2025 ........................................ 105

FILED
in the Middle District of
North Carolina
DEC 18 2025
11:15 a.m.
Clerk, US District Court
By: SSH

# United States District Court
## Middle District of North Carolina

UNITED STATES OF AMERICA

v.

ABALOY CRUZ GONZALEZ

**JUDGMENT IN A CRIMINAL CASE**

Case Number: 1:25-cr-00190-1

USM Number: 41840-308

Lisa S. Costner, Assistant Federal Public Defender
Defendant's Attorney

### THE DEFENDANT:

☒ pleaded guilty to count(s) 1.
☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
☐ was found guilty on count(s) _____ after a plea of not guilty.

**The defendant is adjudicated guilty of these offenses:**

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 8:1326(a) and (b)(1) | Illegal Reentry of a Deported Alien | 04/10/2025 | 1 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) ☐is ☐are dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the economic circumstances.

12/05/2025
Date of Imposition of Judgment

William L. Osteen, Jr.
Signature of Judge

William L. Osteen, Jr., United States District Judge
Name & Title of Judge

December 18, 2025
Date

DEFENDANT: ABALOY CRUZ GONZALEZ
CASE NUMBER: 1:25CR190-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: **33 months.**

☒ The court makes the following recommendations to the Bureau of Prisons: **that the defendant be designated to a facility where he may participate in educational and vocational training, to include obtaining his GED, English as a second language, and welding.**

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district.

- ☐ at ____________ am/pm on ____________ .
- ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

- ☐ before 2 pm on .
- ☐ as notified by the United States Marshal.
- ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ______________________ to ________________________________________ at

______________________________, with a certified copy of this judgment.

________________________________________
UNITED STATES MARSHAL

BY ________________________________________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: ABALOY CRUZ GONZALEZ
CASE NUMBER: 1:25CR190-1«casenumber3_uc_nj_dash»

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: **Three (3) years .**

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable.)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable.)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable.)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable.)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: ABALOY CRUZ GONZALEZ
CASE NUMBER: 1:25CR190-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________________ Date________________

DEFENDANT: ABALOY CRUZ GONZALEZ
CASE NUMBER: 1:25CR190-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________________ Date ________________

DEFENDANT: ABALOY CRUZ GONZALEZ
CASE NUMBER: 1:25CR190-1

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall abide by the mandatory and standard conditions of supervised release.

Within 72 hours of being placed on supervised release or upon completion of the custody sentence, the defendant shall surrender to a duly authorized ICE official, in accordance with established procedures provided by the Immigration and Naturalization Act, 8 U.S.C. § 1101. If ordered deported, the defendant shall remain outside the United States during the term of supervision and shall not reenter the United States without the permission of the United States Attorney General or the Secretary of the Department of Homeland Security.

DEFENDANT: ABALOY CRUZ GONZALEZ
CASE NUMBER: 1:25CR190-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $100.00 | | | | |

☐ The determination of restitution is deferred until ______________. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

- ☐ the interest requirement is waived pursuant to 18 U.S.C. Section 3612(f)(3) for the ☐ fine ☐ restitution.
- ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: ABALOY CRUZ GONZALEZ
CASE NUMBER: 1:25CR190-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☒ Lump sum payment of $100.00 due immediately, balance due
☐ not later than ________ , or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ *(e.g. weekly, monthly, quarterly)* installments of $_______ over a period of ________ *(e.g., months or years)*, to commence _______ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal _______ *(e.g. weekly, monthly, quarterly)* installments of $ _______ over a period of _______ *(e.g., months or years)*, to commence _______ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _______ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are to be made to the Clerk of Court, United States District Court for the Middle District of North Carolina, 324 West Market Street, Greensboro, NC 27401-2544, unless otherwise directed by the court, the probation officer, or the United States Attorney. **Nothing herein shall prohibit the United States Attorney from pursuing collection of outstanding criminal monetary penalties.**

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names, Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

**Payments shall be applied in the following order: (1) assessment; (2) restitution principal; (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>ABALOY CRUZ GONZALEZ,<br><br>Defendant. | Greensboro, North Carolina<br>December 5, 2025<br>9:39 a.m.<br><br>Case No. 1:25CR190-1 |

# TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE WILLIAM L. OSTEEN, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: KYLE D. POUSSON
OFFICE OF THE U.S. ATTORNEY
101 S. EDGEWORTH STREET, 4TH FLOOR
GREENSBORO, NORTH CAROLINA 27401

For the Defendant: LISA S. COSTNER
OFFICE OF THE FEDERAL PUBLIC DEFENDER
251 N. MAIN STREET, SUITE 849
WINSTON-SALEM, NC 27101

Court Reporter: Joseph B. Armstrong, FCRR
324 W. Market, Room 101
Greensboro, NC 27401

Proceedings reported by stenotype reporter.
Transcript produced by Computer-Aided Transcription.

PROCEEDINGS

(At 9:39 a.m., proceedings commenced.)

(Defendant present.)

**THE COURT:** Mr. Pousson, you may proceed.

**MR. POUSSON:** If it should please the Court, the Government would ask to call United States verse Abaloy Cruz Gonzalez, 1:25CR190-1. Mr. Gonzalez is present with counsel, Ms. Costner. This matter is calendared for sentencing. Your Honor, I believe an interpreter is necessary, and one is not present.

**THE COURT:** We don't have the interpreter here yet.

Well, have a seat. Make yourselves comfortable -- who is coming, is it Dr. Bender?

**THE CLERK:** Ms. Vega.

(A short pause.)

**THE INTERPRETER:** I'm here. My apologize to everyone. I was driving from Charlotte.

**THE COURT:** We're glad to have you.

**THE INTERPRETER:** We're all set.

**THE COURT:** Think you're ready? All right. Ms. Vega, I'll have Ms. Stuart administer the oath to you.

(Interpreter sworn by the clerk.)

**THE COURT:** All right. Ms. Costner, good morning.

**MS. COSTNER:** Good morning, Your Honor.

**THE COURT:** How does your client prefer to be

addressed? Is it Mr. Cruz or Mr. Gonzalez?

**THE DEFENDANT:** Cruz.

**THE COURT:** Are you and Mr. Cruz ready to proceed?

**MS. COSTNER:** We are, Your Honor.

**THE COURT:** And have you reviewed the presentence report with him?

**MS. COSTNER:** I have.

**THE COURT:** Are there any objections?

**MS. COSTNER:** There are no objections.

**THE COURT:** Mr. Cruz, have you reviewed the presentence report with Ms. Costner?

**THE DEFENDANT:** Yes.

**THE COURT:** And do you agree with the report?

**THE DEFENDANT:** Yes.

**THE COURT:** All right. You may have a seat. Then I will adopt the presentence investigation report without change. The offense of conviction does not carry a mandatory minimum sentence. The resulting advisory guideline calculation is as follows:

A total offense level of 10.

A criminal history category of IV.

A guideline imprisonment range of 15 to 21 months.

A supervised release range of not more than three years.

A fine range of 4,000 to $40,000.

And a special assessment of $100 is mandatory.

If there's no additional evidence, I'll hear from the parties at this time as to what constitutes a sentence that is sufficient but not greater than necessary, taking into consideration the advisory guideline calculation as well as the factors listed in 18 USC Section 3553. Ms. Costner?

**MS. COSTNER:** Thank you, Your Honor. Your Honor, we are asking the Court to consider a sentence at the low end of his guideline range of 15 to 21 months.

In terms of the nature and circumstances of the offense, this is his fourth time in federal court for reentry, but, Your Honor, each time -- and he's removed each time. This time his reason for coming -- first of all, well, he has -- as I'm sure the Court noted in the presentence report, he has 10 children, nine of whom live in the US locally in Winston-Salem. But also his brother, who was living in Mexico with his mother, became ill with cancer and Mr. Cruz came back to the United States, in part, to work -- he's always worked, and he's got a strong and steady work history -- to work, make money to send home to help pay for his brother's treatment.

And in talking to Mr. Cruz about all of this, it really was not his intention to come back. I mean, he had resolved to stay in Mexico. It really was, in large part, his brother's illness that motivated him to come back to the country. And he was able to earn money. He was able to send

it home. Unfortunately, his brother did die of cancer in 2024.

He remained here. He's got nine young children and is close to those children, has supported those children, and has been an involved father with his children, and that really was his primary motivation was his brother and his kids, knowing that he every time -- that he's been charged with this before, he's been convicted of it before, he's had to do a sentence before, and he's had to -- he's been deported before.

But because of those two reasons, and specifically his brother's illness, he was willing to take the chance to try to help. And I think he was able to help. Unfortunately, his brother's illness was terminal, and despite his efforts to assist in providing money for treatment, his brother did pass away.

Your Honor, looking at his history and characteristics, it's sort of woven into the nature and circumstances of the offense, but I was reviewing his criminal history apart from the illegal reentry convictions. And those are his only felonies. The only felonies on his record are the reentry charges. Most of the other misdemeanors seem to be DWI, reentry, some assault with a deadly weapon, communicating threats. So there are some misdemeanors that may be of concern to the Court.

But the most recent conviction of that nature was in 2015 when he was convicted of assault on a female and illegal

reentry. He has maintained a good relationship with his children's mothers throughout the time that he's been in the country. There have been some issues over his -- over this time.

He -- to his credit, though, Your Honor, when you look at his work history both here in Mexico, he has steadily worked, most recently for a painting company from 2023 until he was arrested in 2025. He's worked when he's been in Mexico working as a taxi driver, working as an auto body repairman, and when he's been in the United States, he's also worked in construction, worked at IHOP as a cook, worked as a plumber.

He was convinced to come over by his older brothers when he was young, when he was 17 years old, and immediately began to work and didn't pursue a further education, but lived with his brother with some older individuals. And as reflected in the presentence report, that might not have always been the best environment for him to be in in terms of growing up, but I think he realized that here in the United States he had opportunities to work and earn more money for his efforts, and so that's always been appealing to him along with the family that he's had here.

He understands, and we've had a good long discussion about the fact that he cannot come back again. And when he goes to Mexico after serving the sentence, he will not be able to be in the United States to see his nine children that live

here, and that's obviously a -- it's a sad fact for him, but it's one he has to accept, and I believe he has accepted it.

His brother who died in 2024 lived with his mom. His mom now, who is 75 years old, has recently been diagnosed with some pretty serious health issues and is currently undergoing some testing for some other issues, and she -- he will -- when he is released from any sentence and he's sent back to Mexico, it is his plan to live with her, to support her, to help care for her. His brother lived in the home with her, but she's always been a pretty strong, active woman. And now with these recent diagnoses, he -- she is in need of assistance. And so he is committed to going back to Mexico, to living with her and helping her.

He also has a son in Mexico who is a young teenager. And while he hasn't had a strong relationship with his son, he's been here with the younger children, he recognizes that this teenage son could use a father and use his guidance and support, and so it's also his goal to go back -- when he's deported to reestablish and establish a strong bond with his son and help raise him and get him through the years that his son is now traveling through the teenage, early adulthood years.

He maintains contact with his other children. He's been able to stay in contact with them while he's been incarcerated, and it will be his goal to continue at least

having phone conferences or -- it just escaped me -- when you're on the phone and can see each other.

**THE COURT:** We'll call it FaceTime.

**MS. COSTNER:** FaceTime, that's the word I was looking for. Yeah, FaceTime and those types of things. He'll be able to maintain contact with them. It just won't be the same as there, and he will try his best to provide support for them. He will not be able to make the same money.

But he has cousins in Mexico. They run a construction company. They have told him that they have a job waiting for him. His primary occupation in the last couple of years has been painting, and that's what he wants to do, but he's, of course, open to any type of work that they will provide him, and so he can work in this family business and hopefully support himself, his mother, and maybe have a little bit of money for his children as well.

So we are asking Your Honor to consider that low end of the guideline sentence, a sentence of 15 months. That will -- he knows that immediately after serving that sentence, he will head back to Mexico, he will be deported, it will get him there to assist his mother to formulate a life there and work.

Your Honor, while he serves his sentence, if he is eligible and there's time, he would like to -- the opportunity to complete a GED and also study English as a Second Language.

He believes that that, even in Mexico, would be helpful to him to still be able to understand English and be able to be bilingual, both English and Spanish. It may -- it may open the door to some opportunities for him in terms of employment.

If he's allowed to learn any occupations or vocational training, he's very interested in welding.

From looking at his history, it doesn't appear he really needs substance abuse treatment or mental health treatment. He's pretty healthy, and his issues or his use of those substances seem to have been pretty limited.

But, Your Honor, as he told me, you know, at this point he is 42 years old. He recognizes this resolving door he keeps putting himself into in coming to the United States, then in prison, and what he wants is to complete the sentence that is imposed on him today, go to Mexico, not come back to this country, and lead a productive life there.

**THE COURT:** All right. I understand those things, and I understand that that is perhaps his intention today, but -- and you've been around me long enough that I'm sure this doesn't come as a surprise, but the last time that he was prosecuted for illegal reentry, a sentence of 27 months was imposed. Now, we are -- there's a guideline for a lesser sentence after he has returned to the United States unlawfully following service of the 27-month sentence, which is concerning in terms of deterrence.

I understand his wanting to be with his children. I understand wanting to come to the United States to make more money to help with the care of his brother for the cancer treatments. That's what he says -- the reason that he says he came. There is always going to be a good reason to come to the United States, I think, always.

My concern in terms of the sentencing factors, particularly specific deterrence, and to some degree, relatedly, protection of the public, is this. So he wants to come back to the United States to spend time with his children. He was prosecuted in 2011 for a misdemeanor illegal reentry. He was again prosecuted in 2015 for felony illegal reentry. And then later, there's another. We'll talk about the third in a second.

His children in the United States, according to paragraph 53, his youngest -- 52 and 53 -- his youngest children are 14, 13, 8, and 6, living in Winston-Salem, which means even after he was prosecuted for felony illegal reentry 10 years ago in 2015, he continued to come to the United States, have children, and remain in the United States unlawfully.

So, yes, I'm sympathetic to his wanting to spend time with his children in the United States, but he knew he wasn't supposed to be here, he knew he was present in the United States unlawfully, and, yet, he continued to do these things.

He certainly had some idea that that could be destroyed at any time, and in my mind -- we'll add a -- so in my mind, specific deterrence is problematic.

If you know you're in the United States unlawfully, and yet you continue to come here, establish a family, get a job, and stay here after having been prosecuted and removed, that raises a tremendous, in my mind, concern with respect to specific deterrence, and it makes -- I don't doubt his representations through you with respect to what he intends to do in the future. But that intent is, in my mind, extraordinarily contrary to what he's done in the past. And so two things flow from that in my mind.

Number one, those factors, including respect for the law -- if you get prosecuted, removed, and continue to come back, that's no respect for the laws of the United States. But more importantly, I think, with respect to specific deterrence, if he continues to do these things -- well, he has shown he's willing to continue to do these things. Twenty-seven months did not deter him from doing -- from returning, establishing more children, more families, and doing -- and engaging in that kind of conduct. So, number one, why would the sentence be less than it was last time if last time didn't deter, didn't protect the public, didn't promoting respect for the law.

And, number two, he's been enhanced by four levels for one prior illegal reentry. He's got three: A misdemeanor

and another felony. And in terms of the 3553(a) factors in calculating the guideline range, if one prior felony reentry conviction aggravates to a four-level adjustment, how in the world do you ignore two other convictions in fashioning a sentence?

**MS. COSTNER:** And I don't have an easy answer for any of that, Your Honor. I would just, I think, submit to the Court that his mother's illness has had a profound effect on him in his desire to care for her. In the presentence report it recites the childhood that he had and the closeness that he shared with his parents, and he has a strong bond with his mother, and she needs him now. She's always been a strong, healthy woman who has been able to manage her life, and now she's getting to a point where she can't, and that may even get worse as they learn what testing results are, you know, come forth in the near future. So I would submit that that's got -- that's changed his perspective greatly.

And, Your Honor, he keeps coming back, but I think you can't discount just the lure of this country and the feeling that coming here is opportunity, and it's a way to make money, and it's a way to support your family. His family, his children and brother and -- I mean or significant family members are here in this country. So that is a very strong lure.

**THE COURT:** I don't in any way discount the lure, and

I don't in any way discount the effect that the decisions about enforcing the laws can affect behaviors in other countries. If we're not going to enforce the immigration laws, of course, it's going to be an incentive to come to the country in any way possible. Those things I completely understand.

But at the same time, those laws are our laws; and if Congress doesn't choose to change them, then the courts have a duty to enforce them when those cases are prosecuted. This is -- as you pointed out, it's his fourth time in federal court, and it's his third illegal reentry. Let me see what the Government has to say. Mr. Pousson?

**MR. POUSSON:** Thank you, Your Honor. You've identified the factors the Court believes are most weighty in this case, the need for specific deterrence and the need to promote respect for the law. For those reasons, I think Probation's recommendation in this case is actually very reasonable --

**THE COURT:** If those are the considerations, why do you impose less than 27 months? That didn't work.

**MR. POUSSON:** I think the Court could easily justify an upward variance, I do, and there's a balance there --

**THE COURT:** What's the Government say?

**MR. POUSSON:** Your Honor, it's a tough call. My typical approach to escalating punishment is that if a certain sentence has not worked and has not had the desired effect,

then more is needed the next time. I always do see a value in a guideline sentence, though, for the reasons that it receives the deference on appeal. But I think when we're looking strictly at the 3553(a) factors --

**THE COURT:** Yeah, I get deference on appeal, but we've got to apply the 3553(a) factors, and I'm not going to do it in a way -- I'm going to do it in a way I think the law requires, not necessarily what can I best defend in the Fourth Circuit.

**MR. POUSSON:** I understand, Your Honor. And I do think that when we look at the idea of escalating punishment that there is a justification for sentence above the guidelines here.

For those same reasons, I think that the Court can and should impose the recommended three-year term of supervised release. It's a lengthier period than has been imposed in the past, and I make that recommendation notwithstanding the fact that I recognize he's likely to be deported, and that's typically disfavored. But it is an added measure of deterrence that I think is appropriate in this case.

Unless there are questions, those are my general thoughts.

**THE COURT:** And I should clarify. I mean, the Fourth Circuit -- the circuit court is responsible for reviewing the sentence imposed, calculation -- making sure the calculation of

the guideline is correct and then reviewing the sentence imposed by the district court, and, yes, for appeal purposes, for circuit purposes, there are the -- there are the inferences and presumptions that can be drawn from a guideline range sentence, and I certainly appreciate that.

But we're also required to explain our sentence, and the Fourth Circuit, quite rightfully, is charged with the responsibility of ensuring that our explanation of the chosen sentence is appropriate, reasonable, and everything else. And so it's -- it's not so much that I'm not worried about Fourth Circuit review. They are the ones that evaluate what I did; and if I'm not appropriately evaluating factors, they, quite properly, should send the case back.

By I just -- I'm really struggling here to say, okay, he received the misdemeanor prosecution, then he got 12 months, then he got 27 months, and each time he returned, that to say, okay, this time I'm going to impose 15 to 21 months, I've struggled to see how that answers or responds to -- or applies maybe is a better word -- factors like specific deterrence, factors like general deterrence, factors like promoting respect for the law, protecting the public.

I agree with the defendant that there are no felony convictions other than the illegal reentry convictions, but there are a lot of misdemeanor convictions, including a DWI and some assaults, which are concerning to say the least.

Mr. Cruz, you're not required to say anything. If you choose to remain silent, your silence will not be held against you in any way whatsoever. But you do have the right to address the Court before any sentence is imposed, and if you wish to address the Court, now is the appropriate time.

**THE DEFENDANT:** I just wanted to say that the last three children that were in the sentencing report were not children that I engendered here. The last one was born here, but his mother -- or her mother entered the country through an asylum process as she was already -- while she was already expecting. And that would be it.

**THE COURT:** The three children were not born in the United States? Is that your position?

**THE DEFENDANT:** Only the last one, the one that was -- came in through his mother while she was pregnant with that child, through the asylum.

**THE COURT:** Let's see. Let's say that's the case, Mr. Gonzalez, in terms of the facts. You have argued to the Court that you're not going to return this time because your mother is sick, and she needs you. Did you hear that argument?

**THE DEFENDANT:** Yes, and also because at my age, I just don't want to waste any more time in detention because of my age.

**THE COURT:** You're 42?

**THE DEFENDANT:** Yes.

**THE COURT:** Did you want to waste time in detention when you were 32?

**THE DEFENDANT:** I saw things differently than I see them today. I'm still strong, and I can still work, and I don't want to waste time like I was willing to do when I was 32.

**THE COURT:** What about when you were 38 years old?

**THE DEFENDANT:** Again, I was younger, and my thought process was different.

**THE COURT:** What about when you were 40 years old, and you returned to the United States again?

**THE DEFENDANT:** As my attorney said, the reason that point was my sick brother, and I was forced to come back -- I was required to come back in. He's now gone. I only have my mother left in Mexico and that one son that I have, and, well, that's pretty much it.

**THE COURT:** How do you choose between your mother and your nine sons? Your sons need you -- or your nine children? They need you, too, right?

**THE DEFENDANT:** Well, regarding the younger children, their mother is planning to go back to Mexico, and the older ones are able to come in and out of the country.

**THE COURT:** Then -- anything else?

**THE DEFENDANT:** That would be it.

**THE COURT:** All right. You can have a seat.

**THE DEFENDANT:** Thank you.

**THE COURT:** In fashioning a sentence, one of the first steps involves sorting out what is credible and what is not, that is, what information has sufficient indicia of reliability to support findings as to the facts in a particular case.

Not only -- Mr. Cruz' name is listed in the presentence report as Abaloy Cruz Gonzalez. According to the face sheet, the aliases that he has used are Lenny Cruz Gill, Jafet Orlando Mendez, Zisardo Brava Brava, Zisardo Cruz Bravo, and Jafet Orlando Tapia Mendez, six different aliases that have no relationship to his true name.

According to the presentence report, Mr. Cruz has been prosecuted twice at least -- in paragraph 36, he was prosecuted under the name of Zisardo Cruz Brava; in paragraph 39, he was prosecuted under the name Zisardo Cruz-Brava; and in paragraph 40, he was prosecuted under the name Zisardo Cruz Bravo. Also according to the presentence report, he has -- one, two, three, four -- five alias dates of birth, three different North Carolina driver's license numbers, and, as a result, it makes it very difficult to say that Mr. Cruz's expressed intentions are credible and reliable because much of the conduct that he has engaged in in the United States has involved the use of false and fraudulent names, dates of birth, and other information.

Relatedly, while in the United States -- so to put that in perspective, maybe Mr. Cruz was working in the United States, maybe not, but he explained to the probation officer in terms of past employment that, while working here, he has always financially supported his children. So there are six minor dependents, plus two mothers who suffer from epilepsy, according to Mr. Cruz. And in terms of employment, he claims that he worked for a painting company, W.B. Paint, in High Point, North Carolina, but the probation officer was not able to locate a business for W.B. Paint and verify that employment.

I make those observations to say it is nearly impossible under those circumstances to determine what is true with respect to Mr. Cruz' representations and what is not.

So in terms of reviewing the history and characteristics of the defendant, while coming to the United States for a contended reason of making money to send home to help with my brother's cancer treatments, number one, his brother died in 2024. Mr. Cruz remained in the United States to be with his children after the passing of his brother.

And here the number of past felony prosecutions for illegal reentry coupled with a prior misdemeanor conviction for illegal reentry, at least to this Court, suggests that, number one, as I indicated during my comments, there's absolutely no respect for the laws of the United States. And that's without looking at the number of misdemeanor convictions that Mr. Cruz

has acquired while in the United States:

His misdemeanor convictions go back to 2000. Those are initially driving-type offenses.

But in 2007, there's misdemeanor assault with a deadly weapon, more driving offenses.

In 2008, misdemeanor carrying a concealed gun, which happens to be -- if he had a firearm and was present in the United States as an illegal alien, that's a separate federal offense.

Another misdemeanor -- not another -- a misdemeanor driving while impaired in 2010 at a time when he didn't have an operator's license.

2014, misdemeanor resisting a public officer.

2015, misdemeanor assault on a female.

Misdemeanor communicating threats.

And so here a lack of respect for the law, specific deterrence, general deterrence, and protecting the public are significant, whatever Mr. Cruz's personal history and characteristics may suggest in terms of caring for his brother, caring for his mother, and anything else in the case -- any other history and characteristics in terms of his children. Mr. Cruz simply will not abide by the law in the United States, particularly with respect to reentry.

The guidelines are properly calculated at 15 to 21 months. But at least in my analysis, those guidelines do not

take into account the fact that this is Mr. Cruz' fourth illegal reentry prosecution, nor do the guidelines take into account the very limited amount of time that those prior prosecutions deterred Mr. Cruz from entering the United States. There's a 2011 misdemeanor illegal reentry, then a 2015 illegal reentry/felony prosecution, a 2018 illegal reentry for which he served 27 months, and then, according to the presentence report, he returned to the United States in 2023.

Under those circumstances, quite frankly, I would vary well above the advisory guideline range. I can make an argument -- whether successful or not, I can make an argument that a sentence in the 50-, 60-month range is appropriate in Mr. Cruz's case. But I think that would be greater than the Court can determine with any degree of certainty in terms of imposing a sentence that is sufficient but not greater than necessary, and my reasoning on that is this, and I've said this before. But there's -- each administration has the right, that is, Executive Branch, has the right to determine policy. They have the right -- every administration has the right to determine what laws they'll enforce, what laws they won't enforce. Now, I'm using that term maybe somewhat differently and much more narrowly than might ordinarily be understood.

But the point is, ultimately, that in 2023, Mr. Cruz entered the United States at a time where -- I don't want -- I don't want to inappropriately describe the policy that was in

existence. But let's say it was a time when there was a permissive approach toward unlawful entries into the United States, and under those circumstances it's difficult to say that the lack of respect for the law, in some respects, is something that's solely attributable to Mr. Cruz. In other words, if there is an approach in which laws are going to be permissible -- or activities with respect to enforcement are clearly going to be permissive rather than prohibitive, then people are going to take advantage of that.

So all things considered, I think a variance upward is appropriate, but I think a sentence of 33 months, which is six -- which is 12 months above the high end of the guideline range and six months above the previous sentence that was imposed is sufficient but not great than necessary.

Relatedly, to explain the sentence, Mr. Cruz has landed at a IV -- let's see if I've got my numbers right. He's landed at a 10 and a IV in terms of the guideline calculation in this particular case. If I were to add another four levels for the other illegal reentry conviction, that would end up at a 14 and a IV, or a 27- to 33-month guideline range. I think that range more accurately reflects the seriousness of the offense and also the 3553(a) factors in terms of deterrence, protecting the public, and promoting respect for the law specifically. So I will impose that sentence.

I am going to reimpose -- or impose a term of

supervised release. I think, given this history, the added level of deterrence by a term of supervised release makes imposing that term of supervised release necessary.

I'll make the recommendations with respect to GED, English as a Second Language, and vocational training to and including welding, although according to the presentence report, the way I read it -- I'm not sure I read it correctly, but the way I read it is he's not -- I think the word used was "exempt." I took that to mean he was not eligible for those programs. Did I read that correctly?

**PROBATION OFFICER:** Your Honor, I didn't write the presentence report, but from my understanding it is just a way for their officer to say he might not be eligible, but it would still be worth the recommendation.

**THE COURT:** So he still could be eligible, but BOP gets to make a discretionary call on that?

**MS. COSTNER:** Yeah, it's possible. I understand with these convictions, sometimes people are exempt or not eligible, but I always hope that that will change because I believe that everybody would benefit from those programs.

**THE COURT:** I agree. I've varied upward. I'm going to make that recommendation, and the BOP can exercise their discretion as appropriate.

Anything I failed to address or need to address?

**MR. POUSSON:** No, Your Honor. Thank you.

**THE COURT:** Ms. Costner?

**MS. COSTNER:** No, Your Honor.

**THE COURT:** Mr. Cruz, if you will stand then, please, sir.

In Case No. 1:25CR190-1, United States versus Abaloy Cruz Gonzalez, as to Count One, it is hereby ordered that the defendant is committed to the custody of the Bureau of Prisons for a term of 33 months followed by three years of supervised release. A special assessment of $100 is mandatory and is hereby imposed. A fine is waived because of defendant's inability to pay, and restitution is not imposed in this case.

During the -- the Court recommends to the Bureau of Prisons that the defendant be designated to a facility where he may participate in educational and vocational training, to and including obtaining his GED, English as a Second Language, and welding.

During the period of supervised release, it is ordered that the defendant shall abide by the mandatory conditions, the standard conditions listed in the presentence report, and the following special condition is imposed for the reasons set forth in the justification following each condition, and that is:

Within 72 hours of being placed on supervised release or upon completion of the custody sentence, the defendant shall surrender to a duly authorized I.C.E. official in accordance

with established procedures provided by the Immigration and Naturalization Act, 8 USC Section 1101. If ordered deported, the defendant shall remain outside the United States during the term of supervision and shall not reenter the United States without the permission of the United States Attorney General or the Secretary of the Department of Homeland Security.

Mr. Cruz, you do have the right to appeal the sentence I have imposed in this case. If you choose to appeal, notice of appeal must be filed within 14 days of the entry of judgment. If you wish to appeal and cannot afford the services of counsel, counsel will be appointed to represent you. Ms. Costner will be responsible for advising you with respect to your right to appeal and will file a notice of appeal if you instruct her to do so.

Anything further?

**MR. POUSSON:** No, Your Honor. Thank you.

**MS. COSTNER:** No, Your Honor.

**THE COURT:** We'll be in recess for five minutes.

(At 10:28 a.m., proceedings concluded.)

* * * * *

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Joseph B. Armstrong, FCRR
United States Court Reporter
324 W. Market Street
Greensboro, NC 27401

Date: 02/25/2026